[*General Term, April,* 1872.]

FRITSCH, BURKHARDT & CO. *v.* J. T. VAN MITTENDORFF ET AL.

If real property be levied upon, or ordered to be sold upon an order of sale issued from a State court, and afterward, but before a sale, proceedings be begun, in the United States District Court, against the debtor, to have him declared a bankrupt, and he is duly declared a bankrupt, and an assignee be chosen and qualified, after the sale, but before its confirmation, the sale is authorized and legal, and will be confirmed, and the proceeds distributed according to law, by the State court, though the assignee makes himself a party in the State court, and resists such confirmation and distribution, he showing no special injury that will result to the bankrupt estate thereby.

Before the assignee's appointment the petitioning creditor in bankruptcy was a permissible party in such proceedings to confirm, and on his application was properly made such party.   But his powers ceased when such assignee was appointed, and the latter could become the party in his stead, and adopt his answer and cross-petition and motion to set aside such sale.

State courts are bound by, and will carry out the bankrupt law in every

case before them governed by its provisions, in the same manner and to the same extent as a bankrupt court does, or as any State statute would be enforced.

Where it does not appear what evidence may have been offered before judgment to establish a valid mechanic's lien, the court, on motion to confirm a sale of the land to satisfy the lien, will not inquire as to the evidence upon which the judgment, finding such lien, was rendered.

*Mallon & Coffey*, for plaintiffs.

*Shonter & Smith* and *J. G. & H. Douglass*, for defendants.

YAPLE, J.   On September 30, 1871, the plaintiffs brought suit in this court against the defendant, Van Mittendorff, to recover a judgment upon an account for work, labor, and materials, etc., furnished, amounting to $1,350.68, with interest from March 1, 1871.   They also claimed that the same was the subject of a mechanic's lien on the premises hereinafter mentioned; and that they had duly perfected such lien. They asked for a judgment for the amount due, and also for an order of sale upon their lien to satisfy such judgment. They made Charles Folz and Benjamin Barton parties defendant, who answered, setting up a prior lien upon the premises for $2,100 and interest, secured by mortgage, which mortgage and mortgage debt they had assigned to one John O'Brien, who had afterward assigned the same to Isaac W. Parker, the present owner and holder thereof.

Parker duly answered, setting up his said claim.

James Dunlap & Co. were, on their motion, also made defendants, and answered, setting up a judgment lien upon the premises, which judgment they obtained against Van Mittendorff on December 4, 1871, it amounting to $1,007.40, and costs.   Howard Douglas also became a party defendant, and, by answer, set up a lien upon the premises for taxes paid for $71.85.

Van Mittendorff demurred to the petition, and the demurrer being overruled, he remained in default.

On November 20, 1871, the plaintiffs obtained a judgment by default against Van Mittendorff for $1,404.68 and costs,

and an award of execution. This judgment related back to the first day of the term, November 4, 1871. The plaintiffs, at the same time, took an order of sale of the premises to satisfy their mechanic's lien, which the court found to exist.

On January 3, 1872, an order of sale was duly issued. The property was appraised at the sum of $6,000; that is, "said lots four and five, *ground and buildings.*" The property was then advertised for sale, and sold on February 24, 1872, for $4,600, to P. A. Scheeren. It was advertised as consisting of said lots, "*together with all the improvements thereon.*" The property contained machinery, part of which was fixtures and part not. Upon the return of the sale by the sheriff to this court, the plaintiff filed a motion to confirm the same, and distribute the proceeds, and the debtor does not object, while the purchaser asks, in open court, for confirmation of the sale.

Such confirmation and order of distribution are resisted. It appears that, on February 20, 1872, two days before the sheriff's sale, the Mill Creek Lumber Company filed, in the District Court of the United States for the Southern District of Ohio, a petition in bankruptcy against Van Mittendorff, under which such proceedings were had that, on March 1, 1872, Van Mittendorff was duly declared an involuntary bankrupt.

On March 2, 1872, no assignee in bankruptcy having then been appointed, owing to the necessary period of time not having elapsed for that purpose, the Mill Creek Lumber Company, the petitioning creditor in bankruptcy, asked and obtained leave from this court to become a party to this suit, and to file its answer and cross-petition, all of which were done. In that answer and cross-petition the lumber company set up Van Mittendorff's indebtedness to it, amounting to $1,188.07 and interest, and reserving to itself the right to contest all claims and liens of all parties interested; it alleged the proceedings and adjudications in bankruptcy, and claimed that all right or power in this court to proceed

further in the premises was at an end, and that the whole of the bankrupt's estate would have to be administered in and by the bankrupt court, the sale being also void, having been made two days after the petition in bankruptcy was filed, to which time of filing the adjudication related back. A stay of all proceedings was asked until an assignee in bankruptcy should be chosen and qualified.

The lumber company then, on March 4, 1872, filed a motion to set aside the judgment and order of sale, the appraisement and sale, because of the proceedings in bankruptcy; and also because more property was sold than was appraised by some $2,000, it being machinery.

The motions to confirm and to set aside the sale, the court, at Special Term, reserved for decision here. Since such reservation an assignee in bankruptcy has been appointed, Fred. Leischbein. He now comes into this court and submits himself personally to its jurisdiction, and adopts the answer and cross-petition of the lumber company, and their motion resisting confirmation and distribution, raising simply the questions of the court's jurisdiction of the subject matter, and of the validity of the appraisement and sale.

As to the appraisement being less than the value of the property, and not of all the property sold, it is observable that neither the sheriff's, nor any of the appraisers' affidavits are taken by those seeking to set aside their proceedings, though all live in the city. Their proceedings are *prima facie* correct, until the contrary be shown. The appraisers estimate value under oath, and they are the means the law chooses to ascertain such value. The difference between "ground and buildings" and "all the improvements thereon," will be regarded as merely verbal, unless it be shown as a fact, that all which was sold was not appraised. If the appraisers did not, in fact, appraise a substantial part of the realty, which would pass by the sale, and which was sold, that would be very material to this question. But such fact is not shown by any satisfactory evidence.

Fritsch, Burkhardt & Co. v. Van Mittendorff et al.

In behalf of the motion to set aside, the affidavit of J. H. Luhn is read, who estimates the value of the building at $3,500, and the machinery at $3,875, while the value of the ground he reckons as additional, but the value of which he does not estimate, not knowing it. Also, The. Shoemaker's affidavit, which estimates the machinery at $3,540, and the building at $3,500. He swears that a considerable portion of the machinery is movable. He places no estimate upon the ground. This is met by the affidavit of Francis Fritsch, one of the plaintiffs, who swears that he furnished all the machinery in the building for $1,350, and that it has since depreciated in value. He swears that the house could now be built new for $2,500.

Upon this state of the case we are not authorized to set aside the sworn appraisement of three competent men, whom the law makes the proper judges, and whose estimate must stand unless shown satisfactorily to have been erroneous.

A question is raised as to the regularity of the assignee's standing in the case, he having merely adopted the answer and cross-petition of the lumber company. We think the course he has pursued is in accordance with correct practice. After proceedings in bankruptcy are commenced and before an assignee has been chosen and qualified, the bankrupt himself, or a petitioning creditor, may institute all necessary proceedings, in any court, to preserve the debtor's estate to the adjudication in bankruptcy; but when an assignee is duly appointed, their powers to prosecute cease, and he must do so by making himself a party, or such proceedings will abate. *In re Bowie*, 1 B. R. 185; *Irving* v. *Hughes*, 2 B. R. 20; *in re Ghiradelli*, 4 B. R. 42; Bump, 4 ed., 206, 207. So the assignee in bankruptcy is properly in the case, and the lumber company is not.

In the next place, we are to determine what effect, if any, the filing of the petition, and adjudication, in bankruptcy had upon the proceedings to sell this land under an order of this court previously rendered and issued, the sale

having been made two days after the proceedings in bankruptcy were commenced, under an advertisement of thirty days.

Proceedings against a party in ordinary suits, begun *before* the filing of a petition in bankruptcy, by or against him, may be stayed; though suits may be commenced at any time to stop the running of the statute of limitations, but not proceeded in further, if begun after the filing of a petition in bankruptcy; and ordinary suits against a debtor may be permitted by the bankrupt court to proceed in other courts to judgment, if brought *before* the commencement of the bankrupt proceedings, to settle disputed claims, but such judgments can not be enforced by execution.

Suits begun to enforce a mortgage or other *lien* against the bankrupt's property, *before* a petition in bankruptcy is filed, may be prosecuted to final judgment, or decree, in any court; but upon the rendition of such judgment, or decree, all further proceedings are to stop, in such courts. The lien is then recognized and adjusted by the assignee. *Samson* v. *Burton*, 4 B. R. 1; Bump, 4 ed., 194, 195; *in re Rosenberg*, 2 B. R. 81; Bump, 166, 376, *et. seq.;* Id. 140, 141.

But, in cases in which a judgment or final decree has been rendered and a levy made, or order of sale issued, by a State court, *before* proceedings in bankruptcy are begun, the property is in custody of the law, and it may be sold and the proceeds distributed. *Samson* v. *Burton*, 4 B. R. 1; Bump, 4 ed., 196, 197. If, however, it is shown, that, by such final sale, some special and peculiar injury will result to the estate of the bankrupt and to the interests of creditors, such court, itself, would arrest the proceedings, or the bankrupt court could do so, by enjoining the parties and ministerial officers of the State court. The bankrupt law is as much addressed to, and is as binding upon State as upon the federal courts, and they will, in every case pending before them governed by its provisions, en-

force it the same as a State statute. It is not shown to us that any special or peculiar wrong or injury will result from the confirmation of this sale, and the distribution of the proceeds here; on the contrary, it appears that to do so now will save costs, and thus save the bankrupt fund.

Ordinarily, after the levy of an execution issued upon a judgment, or the issuing of an order of sale upon a final decree, real estate may be sold, though the debtor die, or if a *feme sole*, married before the sale. There is a great difference between *mesne* and final process. *Massie* v. *Long*, 8 Ohio, 287; *Craig* v. *Fox*, 16 Ohio, 563.

Whether *lands* levied on could be sold upon execution, after the death of the parties, since our code, sec. 416, *quære*, as the levy upon lands does not operate as satisfaction of the debts, while a levy upon personal property does.

But it is further objected that the plaintiffs, in this case, had no valid mechanic's lien, it not being taken within the time prescribed by the statute, the last item to bring it within time not being the subject of a mechanic's lien. We do not sit, in this case, as a court of errors. We are bound by the judgment rendered. What parol evidence the court below may have had before it to determine its action, we can not know. Besides, there was a valid judgment rendered upon the account, which was in accordance with the provisions of the mechanic's lien statute. 1 S. & C. 835, sec. 8.

The sale will be confirmed, and the proceeds ordered to be distributed under a proper order, which may be drawn and submitted.